# Commonwealth *v.* Polof, Appellant.

Submitted September 8, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

S. *David Fineman*, for appellant.

*Peter Noel Duhamel* and *Ben W. Joseph*, Assistant Attorneys General, and *Walter M. Phillips, Jr.*, Deputy Attorney General, for Commonwealth, appellee.

OPINION BY JACOBS, J., March 29, 1976:

Appellant Samuel Joseph Polof was convicted of one count of perjury on January 30, 1975, following a jury trial. Motions for a New Trial and In Arrest of Judgment were thereafter filed and denied and appeal to this Court followed. Because appellant has failed to properly preserve the issues he now presents by raising them below in his post-trial motions we may not consider them on this appeal and we therefore affirm.

Samuel Polof appeared as a witness before the Special Investigating Grand Jury of Philadelphia County on August 28th and September 6th, 1974. Mr. Polof's testimony was taken pursuant to the Grand Jury's investigation of alleged payments of money to police officers and public officials in order to protect illegal gambling activities. In the course of appellant's testimony he made certain statements which led to his indictment for perjury in September, 1974. On October 8, 1974, counsel for appellant filed a Motion to Quash Indictments on the four counts of perjury charged. As of the same date appellant also filed a Motion for Discovery, which was allowed in part and denied in part by Judge KUBACKI on November 20, 1974, after answer by the Commonwealth and argument. Appellant's Motion to Quash Indictments was denied on the same day, also after answer and argument. Two of the indictments were thereafter amended (consisting of deletion of certain of the allegedly false statements), with leave of court, and an additional Motion to Quash Indictments was filed on January 13, 1975. Judge KUBACKI noted of record on the same date that the Motion to Quash Indictments had been denied on the record. (Counsel for appellant apparently chose to treat the amendment as a basis for filing a new motion to quash; Judge KUBACKI seemingly disagreed and endorsed the record accordingly). Appellant thereafter entered a plea of not guilty to all four counts, was tried before a jury, Judge KUBACKI presiding, and was convicted on one count of perjury, on January 30, 1975.

Appellant filed post-trial motions on February 6, 1975. These included the usual "boiler plate" motions together with two general grounds for relief.[1] Although appellant's brief here recites that supplemental motions were filed after the Notes of Testimony were transcribed, no additional grounds appear of record. Post-Trial Motions were denied on April 21, 1975 and appellant was sentenced to three to twenty-three months in Philadelphia County Prison. In an opinion dated June 23, 1975 Judge KUBACKI states that no brief on the post-trial motions was submitted by appellant's counsel, that "[t]he motions were general in nature" (suggesting that supplemental motions were in fact never filed) and that "[n]o meritorious arguments were advanced by counsel for the defendant" (an apparent comment on whatever oral arguments were advanced).

The preceding makes it clear that this Court has no record of the nature of appellant's oral motions and arguments nor any record indication of grounds for post-trial relief other than those advanced in appellant's "Motion For New Trial And/Or Arrest of Judgment", supra n. 1, filed February 6, 1975. Appellant brings this appeal from the judgment of sentence imposed April 21, 1975 (which sentence was stayed pending his appeal on May 21, 1975), advancing numerous grounds upon which he should be granted relief.

Appellant has raised eighteen assignments of error which present various interconnected issues and some

---

1. Appellant's Post-Trial Motions were in the form of a "Motion For New Trial And/Or Arrest of Judgment", in support of which he assigned the following reasons:

"1. The verdict is contrary to the evidence.

"2. The verdict is contrary to the weight of the evidence.

"3. The verdict is contrary to the law.

"4. The denial of this Court of Defendant's Petition to Quash Indictments.

"5. Denial by this Court of Defendant's Motion for Discovery."

questions which have heretofore been unconsidered by our courts. Although some of appellant's arguments are novel and may ultimately merit an opinion in a proper case, the procedural posture of this case is such that they are not properly presented to us because they were not raised in post-trial motions and we may not consider them.

Appellant's issues Nos. 4 through 10, 12, 14, 15 and 18, as set forth in the "Questions Presented" section of his brief, were in no way raised in his post-trial motions, supra n. 1, and are therefore clearly waived. Not only does the record fail to disclose that they were considered below on written motion but the opinion of the lower court fails to show that they were raised orally as well. We must, therefore, deem these issues waived, *Commonwealth v. Bailey,* .... Pa. ...., 344 A.2d 869 (1975); *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975); because they are not a part of the record. We cannot consider what is not in the record, *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1974).

We are not so clearly precluded from consideration of appellant's issues Nos. 1 through 3, 11, 13, 16 and 17, as set forth in his "Questions Presented."[2] These issues may be said to be theories supporting appellant's general grounds for post-trial relief as set forth in his post-trial motions, reasons 4 and 5, supra n. 1. However, a close analysis of our Supreme Court's recent decisions in *Commonwealth v. Bailey,* supra, *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975), and *Commonwealth v. Blair,* supra, leads us to the con-

---

2. Issues Nos. 1 through 3, 11, 13, 16 and 17 contain very specific allegations concerning error allegedly committed in the denial of Defendant's Petition to Quash Indictments and for Discovery. There is no indication of record that these claims were presented to the lower court as a basis for consideration of appellant's post-trial motions.

570

clusion that these issues have been similarly waived by failure to raise them in post-trial motions.

The decision in *Commonwealth v. Bronaugh*, 459 Pa. 634, 331 A.2d 171 (1975), and cases cited therein, makes it clear that alleged errors must be specifically raised below if they are to be preserved for consideration on appeal. In *Commonwealth v. Blair,* supra, it was further noted that the proper procedure for preservation of issues is to have complied with Pa.R.Crim.P. 1123(a) and included the specific issue in the written post-trial motions considered by the lower court. However, because of the now-condemned practice of some judicial districts of ignoring the requirements of Pa. R.Crim.P. 1123(a) the Court in *Commonwealth v. Bailey,* supra, held that in pre-*Blair* cases in which the lower court accepted oral motions and ruled on the merits, it would not require the written motions prescribed in *Blair.*

In the present case the record reveals that none of the above requirements have been met. Appellant's post-trial motions are not specific in their written form, and, unlike the situation in *Bailey,* we have no record of the specific issues raised orally because here the lower court did not rule on the merits, of record.[3] Indeed, the lower court here held that appellant's grounds 4 and 5, supra n. 1, (as well as his "boiler plate" grounds) were "general in nature" and noted that no brief was filed by counsel (thus precluding supplement to their specificity, in writing). The sole indication that other arguments were advanced is the lower court's comment that "[n]o meritorious arguments were advanced by

---

3. *See, Commonwealth v. Irwin,* 460 Pa. 296, 299 n. 3, 333 A.2d 735, 737 n. 3 (1975) in which the Court noted that although not specifically asserted in post-trial motions, it would hear appellant's argument *because the issue involved was discussed* by the court en banc in denying appellant's motion for new trial, evidencing that the assignment of error was raised before the trial court.

counsel for the defendant." No indication as to what these arguments were is present on the record, as noted above.

Moreover, appellant *has not* argued that he preserved the "grounds" below and here raises "theories" to support them, as he well might have based on the decision in *Commonwealth v. Wayman,* 454 Pa. 79, 82 n. 1, 309 A.2d 784, 786 n. 1 (1973). Had he done so, we would still remain unconvinced that the arguments now advanced are properly before us. The *Wayman* reasoning, which would seem to support the conclusion that appellant's "grounds" (to wit, that the lower court erred by refusing to quash the indictment or grant the total range of discovery sought) were preserved here has been specifically rejected by Justice NIX in *Commonwealth v. Mitchell,* supra (joined by one Justice with three concurring). Although *Mitchell* does not explicitly indicate that it is to be given retroactive effect, a close reading of the decision reveals that it does not announce a prospective rule but rather a recognition that a temporary departure from a long standing rule was erroneous. The Court did not say "henceforth" we will require that the theory as well as the grounds be raised below, rather, it held in the case *then* before it that a theory *there* not raised below was waived. This conclusion is supported by Justice POMEROY's comment in his Concurring Opinion in *Mitchell* that he " . . . applaud[s] this development, even though a few horses were stolen before the barn door was locked." *Id.* at . . ., 346 A.2d at 54. (footnote by the Court omitted). The Court thus returns to the "fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court." *Kimmel v. Somerset County Commissioners,* 460 Pa. 381, 384, 333 A.2d 777, 779 (1975).

We are thus convinced that the recent trend of our Supreme Court's waiver decisions precludes con-

sideration of the many theories appellant now raises to support his general grounds,[4] see *Commonwealth v. Mitchell,* supra; *Commonwealth v. Bailey,* supra; *Commonwealth v. Carter,* ... Pa. ..., 344 A.2d 846 (1975); *Commonwealth v. Blair,* supra; *Commonwealth v. Bronaugh,* supra; *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Reid,* 458 Pa. 357, 326 A.2d 267 (1974).

Judgment affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant raises eighteen assignments of error in this appeal from his January 30, 1975 conviction of one count of perjury. The Majority holds that appellant has waived his right to raise these issues because they were not presented to the court below in written post-trial motions. Because I disagree with the Majority's interpretation of the recent decisions of our Supreme Court concerning waiver, I would reach the merits of those issues which I believe have been properly preserved for our review. Of those issues pre-

---

4. We might add parenthetically that consideration of these issues, were we able to do so, would be hindered by the lack of a complete record. The problem presented by this precise situation is recognized in *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975) wherein it is said:

"Appellate Courts render a disservice to judicial economy and the efficient operation of our court system where they freely accept issues that could have and should have been first presented to the courts below for their consideration [cit. om.]. Such procedures encourage the reversal of many trials for errors which could have been, in all probability, avoided or cured if they had been promptly called to the attention of the lower court.

"Additionally, such a procedure not only deprives the reviewing court of the benefit of the reasoning of the lower court on the issue at hand but in many cases requires a decision of an issue on less than a complete record." *Id.* at ..., 346 A.2d at 52.

served for appeal I believe that only one has merit:[1] that appellant was not informed of the impending indictment in sufficient time for him to exercise his right to challenge the array or individual members of the grand jury before the indictment was returned.

Appellant testified before the Special Investigating Grand Jury of Philadelphia County on August 28, and September 6, 1974. The Investigating Grand Jury had been convened to investigate allegations of official misconduct and police corruption. In the course of its investigation, appellant was called to testify about his alleged involvement in the payment of bribes to police officers and public officials to secure "protection" for his illegal gambling operation. On September 16, 1974, an indicting

---

1. In addition to the issues discussed in Parts II and III, *infra* appellant assigns the following theories in support of his contention that the motion to quash the indictments should have been granted (numbered in accordance with the "Questions Presented" in Appellant's Brief):

2. It was error to charge appellant with perjury for denying the commission of offenses for which he could have been punished under the penal laws of the state.

3. It was improper for the grand jury to hear evidence and to vote on bills of indictment while an unauthorized person was present, to wit, a member of the staff of the Office of the Special Prosecutor who had not yet been admitted to the bar of the Commonwealth of Pennsylvania.

11. The indictment failed to set forth the necessary elements of the crime of perjury, and the Grand Jury failed to disclose the grounds upon which it was making its presentment.

13. The indictment was duplicitous and failed to give appellant an opportunity to formulate a defense.

17. The Commonwealth failed to provide the appellant with a preliminary hearing.

Appellant also contends in his sixteenth assignment of error that the court should have granted broader pre-trial discovery. Because I would hold that the denial of the motion to quash was improper, Part III *infra*, I need not consider these assignments of error. However, after careful examination of the record, I have also concluded that they are without merit.

grand jury returned two indictments charging four counts of perjury[2] and four counts of false swearing.[3] These charges were based upon presentments made by the Special Investigating Grand Jury to the indicting grand jury. On October 8, 1974, appellant filed a detailed motion to quash the indictments and an application for pre-trial discovery. On November 20, 1974, the lower court denied the motion to quash the indictments and granted discovery limited to copies of all confessions, all statements of the appellant that the Commonwealth had in its possession, and any recorded conversations between appellant and representatives of the Office of the Special Prosecutor. In all other respects, the appellant's motion for pre-trial discovery was denied.[4] On January 20, 1975,

---

2. Act of December 6, 1972, P.L. 1482, No. 334, §1; 18 Pa.C.S. §4902.

3. Act of December 6, 1972, P.L. 1482, No. 334, §1; 18 Pa.C.S. §4903.

4. Of the thirteen items of requested discovery, the Office of the Special Prosecutor voluntarily supplied appellant with eight. The court below granted discovery with respect to a ninth item. The following items of discovery were refused because they were beyond the scope of Rule 310, Pa.R.Crim.P.: a copy of the transcript of the prior arrest and conviction mentioned in the fourth counts of perjury and false swearing, the names and addresses of all persons who caused the presentment to be made to the indicting grand jury as well as a copy of the testimony of those persons before the investigating grand jury, the names of all grand jurors present on the dates on which the alleged perjury was committed and the names of those voting in favor of the presentment, and a copy of the testimony of the prospective Commonwealth witnesses which was previously given to the Special Investigating Grand Jury. Appellant argues that his pre-trial application for discovery should have been granted because of "exceptional circumstances and compelling reasons," which are required by Rule 310 if expanded discovery is to be granted. The "exceptional circumstances and compelling reasons" which appellant advances consist of the denial by the court of an opportunity to have a preliminary hearing when discovery might be had. I fail to see the logical connection between the items sought by appellant and what might be secured if a preliminary hearing had been held.

appellant pleaded not guilty, and a jury was empanelled. On January 30, 1975, the jury found appellant guilty of the first perjury count, but not guilty of the second, third and fourth counts of perjury.[5] Motions for new trial and in arrest of judgment were filed on February 6, 1975, on the following grounds:

"1. The verdict is contrary to the evidence.

"2. The verdict is contrary to the weight of the evidence.

"3. The verdict is contrary to the law.

"4. The denial of this court of Defendant's Petition to Quash Indictments.

"5. Denial by this Court of Defendant's Motion for Discovery."

Post-trial motions were denied on April 21, 1975, and the court sentenced appellant to three to twenty-three months' imprisonment. This appeal followed.

Part I of this opinion sets forth why I believe that some of the issues argued on appeal are properly before us. Part II will address appellant's sufficiency claim. Part III of this opinion is devoted to appellant's only meritorious contention.

I

Our Supreme Court has mandated strict adherence to Rule 1123(a), Pa.R.Crim.P. See *Commonwealth v. Blair*, 460 Pa. 31, 331 A. 2d 213 (1975). In every criminal case, the trial judge is required to warn the defendant who has been found guilty ". . . . that only the *grounds* contained in . . . [post-trial] motions may be raised on appeal . . . ." Rule 1123(c)(3), Pa.R.Crim.P. (Emphasis added). It is now a clearly established policy of Pennsylvania appellate practice that failure to specifically mention any asserted trial errors in post-trial motions

---

5. The court below removed four counts of false swearing from the jury.

constitutes a waiver of those issues, and precludes their being considered for the first time by the appellate court. *Commonwealth v. Blair*, supra; *Commonwealth v. Bronaugh*, 459 Pa. 634, 331 A. 2d 171 (1975).

There are concededly sound policies for strict application of the waiver doctrine. See *Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975). "Appellate Courts render a disservice to judicial economy and the efficient operation of our court system where they freely accept issues that could have and should have been first presented to the courts below for their consideration." *Commonwealth v. Mitchell*, supra at ..., 346 A. 2d at 52, citing *Commonwealth v. Reid*, 458 Pa. 357, 326 A. 2d 267 (1974). The purpose of Rule 1123 is to avoid unnecessary appeals by ensuring that the trial court is given an opportunity to correct asserted trial errors. Further, application of Rule 1123 ensures the making of a complete record in that testimony and other germane evidence on the issue will be received. An attorney's diligent preparation is rewarded, and he is precluded from relying on an appellate court to bail out his poor performance at trial. In criminal matters, the defendant may ultimately remedy trial error, which was not properly preserved for appeal because trial counsel was ineffective, either by employing new counsel[6] on appeal to raise the ineffectiveness issue or by resorting to Post Conviction Hearing Act relief.[7]

Although the arguments in favor of strict application of the waiver doctrine are formidable, an appellate court abdicates its historic obligation to do justice if it applies waiver too hastily. The Majority, citing *Commonwealth v. Mitchell*, supra, reasons that, because identical *grounds* for appeal may often be supported by alternative

---

6. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

7. Act of January 25, 1966, P.L. (1965) 1580, §1 et seq.; 19 P.S. §1180-1 et seq. (Supp. 1975).

*theories,* appellant fails to satisfy the requirements of Rule 1123(a) unless the specific *theories* supporting the *grounds* for reversal are enunciated in written post-trial motions.[8] I believe that this is an unnecessarily narrow reading of Rule 1123(a).

Rule 1123(a) states: "Within seven (7) days after a finding of guilt, the defendant shall have the right to file written motions for a new trial and in arrest of judgment. Only those *grounds* may be considered which were raised in pre-trial proceedings or at trial ... [O]nly those *issues* raised and the *grounds* relied upon in the motions may be argued ...." (Emphasis added).

And Rule 1123(c) requires the trial judge to admonish the defendant "... that only the *grounds* contained in such motions may be raised on appeal." (Emphasis added). Nowhere in the language of the Rule does it mention *theories,* only *grounds.* It is unnecessarily severe to read into Rule 1123 the requirement that an appellant must provide the court below with the *theories* in writing supporting the *grounds* in order to preserve his appellate right when it is clear from the record that the legal theories have been previously advanced to the lower court.

---

8. Reliance by this Court on Justice NIX's opinion in *Mitchell* may be ill-advised for two reasons. First, *Mitchell* deals with the issue of waiver within the context of our Supreme Court's efforts to define the limits of *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). In *Mitchell,* the Court overrules *Commonwealth v. Wayman,* 454 Pa. 79, 309 A.2d 784 (1973), which held that by raising the involuntariness of a confession in the court below, an appellant implicitly raises a violation of *Futch* even though the *Futch* issue was not specifically argued. *Mitchell,* therefore, does not suggest that issues raised in the court below are waived on appeal if the written post-trial motions do not contain the *theories* presented to the court in support of the *grounds* for new trial and arrest of judgment. Second, the opinion in *Mitchell* expresses the views of only one member of the Supreme Court. Although Justice POMEROY, joined by Justices JONES and EAGEN, approve the overruling of *Wayman,* it is not clear that they subscribe to the broad language of the lead opinion.

In the instant case, appellant advanced as grounds for new trial and arrest of judgment, in addition to boilerplate sufficiency claims, the failure of the lower court to grant appellant's pre-trial motion to quash the indictments and the refusal of the lower court to grant appellant's pre-trial request for discovery. Appellant presented to the lower court detailed arguments in support of his pre-trial motions. Both the Commonwealth and appellant submitted extensive briefs which amply informed the court of the theories for and against appellant's pre-trial motions. When appellant renewed his pre-trial motions in written post-trial motions, it was incumbent on the lower court to reconsider its rulings on the pre-trial motion for discovery and motion to quash the indictments and to consider those legal theories, *and only those legal theories,* presented to the court in the pre-trial motions. The lower court apparently did not do this, but appellant's rights on appeal should not be circumscribed by this omission. Admittedly, better practice would dictate as much precision as possible in framing the *issues* and *grounds* to the lower court. However, I would hold that appellant's post-trial motions stated grounds with sufficient specificity so that this Court must now consider those issues on appeal. None of the policies in support of waiver is offended by this approach, and little is gained by the formality of requiring specific theories to be reiterated in post-trial motions.

Because appellant did not raise the following grounds for new trial or arrest of judgment in post-trial motions, I would agree with the Majority that they are waived:[9]

5. Did the trial court err in dividing the jurors into four groups when charging the jury and thereby confusing the jury as to its obligation to return a unanimous verdict?

---

9. The following contentions are numbered in accordance with "Questions Presented" in Appellant's Brief.

6. Did the trial court err when it recessed the trial for one week, refused appellant's motion for mistrial on this ground, and then refused appellant's request for voir dire of the jury when the trial reconvened?

7. Did the trial court err in taking the four counts of false swearing away from the jury and submitting only the four counts of perjury to them?

8. Did the trial court unduly limit cross-examination of Commonwealth witnesses from written reports prepared in the course of their investigation?

9. Was it error for the lower court to deny appellant's request to hold a hearing to determine whether the Commonwealth possessed certain reports or memoranda which might have been exculpatory or which might have aided appellant in the preparation of his defense after testimony at trial alluded to the preparation of said reports by the Pennsylvania Crime Commission?

10. Did the trial court err in not permitting appellant to introduce certain answers to pre-trial discovery prepared by the Commonwealth, which contradicted part of the testimony given by Commonwealth witnesses?

12. Was the charge of the court adequate in respect to the intent element of the crime of perjury?

14. Did the trial court err in submitting counts II and III of the perjury indictment to the jury because there was no evidence to sustain a finding of guilt on these counts and the only possible result of submitting these counts would be jury confusion?

15. Was it error to permit the introduction of appellant's entire testimony before the Special Investigating Grand Jury?

18. Did the trial court err in permitting the introduction of testimony before the Special Investigating Grand Jury which was irrelevant and which contained evidence of prior crimes? Because these issues are waived, this court is precluded from reaching the merits. *Commonwealth v. Mitchell,* supra; *Commonwealth v. Blair,* supra.

## II

Appellant's fourth contention is that the evidence was insufficient to prove an essential element of the crime of perjury, i.e. the materiality of the false statement.[10]

Section 4902(a) of the Crimes Code[11] states: "A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true." Section 4902(b) defines materiality as follows: "Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a question of law."

Because it is an element of the offense of perjury, materiality must be proven beyond a reasonable doubt. *In re Winship;* 397 U.S. 358 (1970); *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975). However, in determining the sufficiency of the evidence, this Court must accept as true all the evidence and all reasonable inferences arising therefrom upon which the factfinder could properly have based its verdict. *Commonwealth v. Fortune,* 456 Pa. 365, 367, 318 A. 2d 327 (1974); *Commonwealth v. Griffin,* 230 Pa. Superior Ct. 425, 427, 326 A. 2d 554 (1974).

---

10. I believe that appellant's claim of insufficient evidence is adequately preserved for our review by the boiler-plate post-trial motions. No policy in support of waiver is offended by this holding. Appellant also contends in his fourth assignment of error that the lower court improperly circumscribed cross-examination on the issue of materiality. The fourth contention must, therefore, be split into its sufficiency claim which is preserved for our review and its trial error claim which is waived. *Commonwealth v. Mitchell,* supra.

11. See Note 2, supra.

In the instant case, the Commonwealth called the "foreperson" of the Special Investigating Grand Jury, who read into the record selected portions of the charge of the judge who convened the grand jury. The charge to the grand jury defined the scope of the investigation in substantial detail, it included investigation of alleged payment by professional gamblers of "payoffs" to police officers and other officials to secure "protection" from criminal prosecution. It was established that appellant's appearance related to one of the instances of criminality that the grand jury had been instructed to investigate. It was further established that the grand jury called appellant in an attempt to discover the relationship between numbers writers and the Philadelphia Police Department. Appellant was convicted for testifying falsely about the fact that he had discontinued all illegal gambling activity after April, 1973. The effect of this testimony was to attempt to mislead the grand jurors into believing that appellant could offer no relevant testimony regarding the practices currently under investigation. At trial, two undercover officers assigned to the Special Prosecutor's Office testified that they, in fact, had placed wagers with appellant on various occasions after April, 1973. In view of the above evidence, it is clear that the Commonwealth sustained its burden of proof in respect to the element of materiality. See *Commonwealth v. Billingsley*, 160 Pa. Superior Ct. 140, 50 A. 2d 703, affirmed, 357 Pa. 378, 54 A. 2d 705 (1947) ; *Commonwealth v. Bobanic*, 62 Pa. Superior Ct. 40 (1916). Thus, the court properly denied appellant's motion in arrest of judgment.

## III

Appellant contends that the lower court should have granted his motion to quash the indictment because he was precluded from exercising his pre-indictment right to challenge the indicting grand jury array and/or in-

dividual members of the indicting grand jury.[12] The Commonwealth does not dispute that appellant's first "notice" that his case was presented to an indicting grand jury was his receipt of the actual indictment. Thus, it must be decided whether this "notice" violated either the Rules of Criminal Procedure or essential elements of due process.

Rule 203, Pa.R.Crim.P., provides a procedure by which one held for court may exercise his constitutional right to challenge the array of the grand jury or an individual grand juror. All challenges must be exercised before the grand jury returns an indictment. In order to safeguard the pre-indictment right to challenge the grand jury, the rule provides that in no event shall a bill of indictment "be submitted to a grand jury for action until 10 days after a defendant is held for court . . ." subject to two limited exceptions. It is implicit in the Rule that there must be sufficient time between the preliminary hearing and the presentment of the bill of indictment to the grand jury in order to permit the accused an opportunity to challenge the grand jury which is about to indict him. In this sense, there is a "notice" provision within Rule 203. *Commonwealth v. Sills*, 237 Pa. Superior Ct. 280, 352 A. 2d 539 (1975).

Our Court, however, has ruled that because the Rules of Criminal Procedure did not contemplate the procedure of investigating grand juries and only concerned the normal scheme of preliminary hearings and arraignments, they are not literally applicable to such situations. *Commonwealth v. Sills*, supra. Thus, an indictment based upon a presentment from an investigating grand jury should not be quashed "simply because the Commonwealth failed to supply ten days' 'actual' notice to appellee or his counsel prior to submitting the bill of indictment to the indicting grand jury." *Commonwealth v. Sills*,

---

12. This contention is the first issue listed in "Questions Presented" in Appellant's Brief.

supra at 288, 352 A. 2d at 543. *Sills* held, however, that it must be determined whether "the notice supplied by the Commonwealth was sufficient to allow appellee the opportunity to challenge the array of the grand jury, or challenge individual grand jurors for cause." 237 Pa. Superior Ct. at 288, 352 A. 2d at 543.[13]

In *Commonwealth v. Collemacine*, 429 Pa. 24, 239 A. 2d 296 (1968), our Supreme Court held that the ". . . failure to notify the accused or his counsel that his case will be presented to a grand jury other than that to which it was handed over violates fundamental notions of due process." 429 Pa. at 27, 239 A. 2d at 298. In *Commonwealth v. Dessus*, 423 Pa. 177, 224 A. 2d 188 (1966), it was held that a defendant indicted for murder on the same day as his preliminary hearing was deprived of his right to challenge the grand jury.

In *Sills*, supra, we held that seven days' notice was sufficient because the appellee was represented by counsel at all stages of the proceedings and because "[g]rand jury challenges to the array or for cause are not difficult nor time consuming to prepare since the bases for successful challenges are very limited. See Pa. R.Crim.P. 203(a)." 237 Pa. Superior Ct. at 290, 352 A. 2d at 544. Furthermore, ". . . no questioning on voir dire need be prepared since an accused is not permitted to subject a grand jury or grand jurors to a voir dire. See Pa. R.Crim.P. 203(b). While the accused must have an opportunity to challenge within a reasonable time the grand jury array or prove by legally competent evidence that one or more of the grand jurors should be disqualified for cause, Rule 203(a) specifically provides '. . . in any event, a challenge must be made *before* the bill of indictment is submitted to the grand jury.' See *Commonwealth*

---

13. Because the Rules of Criminal Procedure have been held not to apply to investigating grand juries, criminal defendants, their counsel and the courts are left in limbo. Elimination of this confusion would best be served by the adoption of rules which would govern these proceedings.

*v. Dessus,* supra; *Brown v. Commonwealth,* 76 Pa. 319 (1874)." 237 Pa. Superior Ct. at 290, 352 A. 2d at 544. In *Sills,* the period of "notice" provided the defendant was measured from the date on which notice was received until the date on which the bill of indictment was submitted to the grand jury.

In the instant case, the Commonwealth argues that appellant was provided with an opportunity to frame challenges to the grand jury *after* the indictment was returned. However, we cannot take cognizance of this assertion because it is not of record. *Commonwealth v. Young,* 456 Pa. 102, 111-112, 317 A. 2d 258 (1974). Furthermore, it is not clear how a successful post-indictment challenge might be framed when there has been no opportunity to investigate the composition of the grand jury and to file timely challenges. Cf., *Commonwealth v. Jones,* 456 Pa. 270, 273, 318 A. 2d 711 (1974). Thus, even if afforded an opportunity to challenge the method of calling or the composition of the grand jury, there is little guarantee that the opportunity would be meaningful.

Because I would hold that appellant was not provided with a meaningful opportunity to challenge the grand jury array or to challenge individual members of the grand jury, I would reverse his conviction and order the indictment quashed.

SPAETH, J., joins in this dissenting opinion.