410 A.2d 870

**COMMONWEALTH of Pennsylvania**

**v.**

**Howard KEMP, Appellant.**

Superior Court of Pennsylvania.

Argued July 23, 1979.

Filed Sept. 21, 1979.

8

Michael F. Eichert, Philadelphia, for appellant.

Suzanne McDonough, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania, and Judge ROBERT W. HONEYMAN of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

O'BRIEN, Judge:

Appellant, Howard Kemp, was convicted by a jury of murder of the third degree, criminal conspiracy, aggravated assault and weapons offenses. Post-verdict motions were denied and appellant was sentenced to a term of imprisonment of ten to twenty years for the murder conviction with concurrent lesser terms of imprisonment on the remaining charges. This appeal followed.

The instant case arose out of two December 9, 1975 incidents, closely related in time and proximity, in which Harold Berry and Jerome Thomas were stabbed. Thomas survived his wounds, but Berry died shortly after the stabbing. Officer Martin Dietz was the first policeman to arrive at the scene of the Berry stabbing, where he obtained from bystanders a description of the assailants. Appellant and two others were arrested several blocks away, returned to the scene, and were identified by two witnesses as having participated in the murder. Appellant subsequently made an incriminating statement.

Appellant now urges upon us ten assignments of error. We find one of those assignments to be meritorious and because of our disposition of the case it is unnecessary to consider or discuss the remaining nine.

Appellant alleges the prosecution elicited an impermissible reference to the results of a polygraph test administered to a Commonwealth witness. The reference complained of occurred at trial in two separate instances. The first of those instances involved the direct examination of a prosecution witness, Craig Mitchell. Mitchell had been present with appellant and his confederates on the night of the killing, and had driven them to the scene of the crime. The following testimony was elicited from Mitchell by the district attorney:

"Q. (By Miss Christie) After you gave that statement to the police, did you undergo any further investigation?

"A. (By Mitchell) I had to take a lie detector test.

"Q. Just further investigation, without telling us what it is?

"A. Oh. Yes.

"Q. Okay. And subsequent to that further investigation, you left the Police Administration Building, did you not?

"A. Yes."

There was no objection interposed by defense at this point. Later, however, during redirect examination of Mitchell, the following colloquy occurred:

"Q. (By Miss Christie) Right. And, Mr. Mitchell did I tell you that you were a witness in this case?

"A. Yes.

"Q. And did I ask you if you had passed a test?

"A. Yes.

"Q. And did you tell me you passed it?

"A. Yes.

"Q. Now, without telling the jury what the test was - - -."

At that point defense counsel objected and moved for mistrial, styled motion for withdrawal of a juror. The trial court sustained appellant's objection but denied the motion for withdrawal of a juror. Appellant now assigns the ruling of the court below as error.

It is well settled that the law in Pennsylvania is that reference to a lie detector test or the result thereof which raises inferences concerning the guilt or innocence of a defendant is inadmissible. *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971), cert. den. 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1972); *Commonwealth v. Saunders*, 386 Pa. 149, 125 A.2d 442 (1956). "Polygraph examinations have not attained acceptance as a reliable means of ascertaining truth or deception." *Commonwealth v. Cunningham*, 471 Pa. 577, 370 A.2d 1172 (1977), (dissenting opinion by Roberts, J.); *Commonwealth v. Brooks*, 454 Pa. 75, 309 A.2d 732 (1973) (opinion by O'Brien, J., joined by Pomeroy, J.).

Consequently, the prosecution is forbidden to attempt to rehabilitate a witness who has been impeached by a prior inconsistent statement by introducing evidence that the witness had taken a lie detector test. *Commonwealth v. Johnson*, 441 Pa. 237, 272 A.2d 467 (1971). Neither may defendant introduce the results of such a test, *Commonwealth v. Brooks, supra,* (opinion of O'Brien, J., joined by Pomeroy, J.); see, *Commonwealth v. Talley*, 456 Pa. 574, 318 A.2d 922 (1974) (opinion of O'Brien, J.), or evidence that he was willing to take such a test, *Commonwealth v. Saunders, supra.*

It is true that in the latter circumstance, i. e., where the evidence is introduced by defendant, an instruction to the jury may effectively cure the error. *Commonwealth v. Garland*, 475 Pa. 389, 380 A.2d 777 (1977). When the reference is elicited by the prosecution, however, a curative instruction will be of no value. *Garland, id.*, 475 Pa. at 397–98, 380 A.2d at 777; *Camm, supra.* Instantly, the reference was elicited by the Commonwealth.

The Commonwealth argues appellant has waived any complaint concerning the first of the two references to the polygraph examination by having failed to timely object to it. Even if that were true, the second reference was timely objected to and has been preserved for our review. Moreover, it was the second reference, the express assertion that the witness had passed the test, which truly prejudiced appellant.

"The reference here went much further than showing state of mind as to guilt or innocence in relation to a hypothetical test; it raised an inference that an actual test certified the truth of testimony implicating the accused. The inference carried the weight of scientific evidence while in fact that evidence was unreliable. The same considerations that require excluding express discussion of the test result require excluding the instant reference." *Johnson, supra*, 441 Pa. at 240, 272 A.2d at 469.

Judgments of sentence reversed and case remanded for new trial.